IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:14-CV-609-RJC-DCK

| | |
|---|---|
| M-TEK KIOSK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JOHN W. GOSNELL, and ) | |
| RYAN CLAYTON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion To Transfer Venue" (Document No. 24). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will order that the motion be <u>granted</u>.

## I. BACKGROUND

M-Tek Kiosk, Inc. ("Plaintiff" or "M-Tek") initiated this action with the filing of a "Complaint" (Document No. 1) against John W. Gosnell ("Gosnell" or "Defendant") and Ryan Clayton ("Clayton") (together, "Defendants") on October 30, 2014. The Clerk of Court issued an "Entry Of Default" (Document No. 10) as to Defendant Clayton on December 8, 2014, after he failed to timely answer, respond, or otherwise plead in this matter.

"Defendant John W. Gosnell's Motion To Dismiss" (Document No. 11) was timely filed on January 5, 2015. <u>See</u> (Document No. 8). Plaintiff responded by filing an "Amended Complaint" (Document No. 14), pursuant to Fed.R.Civ.P. 15(a)(1)(B). (Document No. 14, p.1, n.1). Based on the Amended Complaint, the undersigned issued a "Memorandum And

Recommendation" (Document No. 15) ("M&R") on January 26, 2015, recommending that the first "…Motion To Dismiss" (Document No. 11) be denied as moot.

"Defendant John W. Gosnell's Motion To Dismiss" (Document No. 16) was filed on February 6, 2015. On May 14, 2015, the undersigned issued a "Memorandum And Recommendation And Order" (Document No. 20) ("M&R&O") recommending that "Defendant John W. Gosnell's Motion To Dismiss" (Document No. 16) be denied, and ordering Plaintiff to file a Second Amended Complaint.

On June 3, 2015, the Honorable Robert J. Conrad, Jr. issued Orders affirming the M&R (Document No. 15) and the M&R&O (Document No. 20). See (Document Nos. 21 and 22). That same day, Plaintiff's "Second Amended Complaint" (Document No. 23) was filed with the Court, as well as Plaintiff's "Motion To Transfer Venue" (Document No. 24) pursuant to 28 U.S.C. § 1404.

On June 17, 2015, "Defendant John W. Gosnell's Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 26) was filed.

The pending motions are now ripe for review. The Court, in its discretion, will direct that this matter be transferred to the United States District Court for the Middle District of North Carolina.

## II. STANDARD OF REVIEW

Regarding the pending motion to transfer, the applicable statute is 28 U.S.C. § 1404, which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). In addition, previous decisions by this Court are instructive.

> Even if venue in a jurisdiction is proper, a court may "for the convenience of parties and witnesses, in the interest of justice," transfer the action to another district where venue is proper. 28 U.S.C. § 1404(a) (2006). This court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on an "individualized, case-by-case basis" of convenience and fairness to the parties. AC Controls Co. v. Pomeroy Computer Res., Inc., 284 F.Supp.2d 357, 360 (W.D.N.C. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988)).

McLeod Addictive Disease Center, Inc. v. Wildata Systems Group, Inc., 3:08-CV-27-GCM 2008 WL 2397614, at *1 (W.D.N.C. June 10, 2008). "The Court emphasizes that the applicable law contemplates that a court's decision to transfer or not transfer venue under 28 U.S.C. § 1404(a) is largely discretionary." 3A Composites USA, Inc. v. United Industries, Inc., 5:13cv083-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

> When considering a motion to transfer, courts should consider, among other things, eleven factors: 1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws. Id. at 96. The factors are accorded different weights based on the court's discretion. Id.

Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 362 (W.D.N.C. 2003) (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C. 1990)); see also, Cohen v. ZL Technologies, Inc., 3:14cv377-FDW-DSC, 2015 WL 93732, at *1-2 (W.D.N.C. Jan. 7, 2015).

3

Venue may be proper in two or more districts. Bartko v. Wheeler, 1:13-CV-1006, 2014 WL 29441, at *9 (M.D.N.C. Jan. 3, 2014) (citing Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003)). "[I]n determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim." Bartko, 2014 WL 29441, at *8 (quoting Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004)).

### III. DISCUSSION

The undersigned again notes that this matter is still in the earliest stages of litigation; no Case Management Plan has issued, and thus, no Court-sanctioned discovery has begun. In the previous M&R&O, the undersigned also made the following observation that is pertinent to the pending motion to transfer:

> First, the issues of jurisdiction and venue present interesting questions. For example, the Court observes that Plaintiff contends "a *substantial* part of the events giving rise to the claims occurred in this District." (Document No. 14, p.2) (emphasis added). Contrary to this initial assertion, **the Amended Complaint does not appear to assert *any* events that occurred in this District**. (Document No. 14). Rather, it appears that the underlying events are alleged to have occurred within the Middle District of North Carolina or elsewhere. Id. In addition, Defendant Clayton, who is the only party alleged to be a citizen of North Carolina, has not appeared in this matter and the Court has entered an "Entry Of Default" (Document No. 10) against him. **The undersigned respectfully encourages counsel for the parties to confer regarding jurisdiction and venue**.

(Document No. 20, pp.4-5) (emphasis added). In concluding, the M&R&O further observed that:

> Plaintiff currently asserts fifteen (15) claims for relief, and suggests that both Defendants are liable for all claims. The undersigned suspects that after further review, those claims might be narrowed. Whether or not the claims are narrowed, the undersigned is convinced that the Court and the parties will be

4

> greatly assisted in considering the claims if Plaintiff files a Second Amended Complaint that is more precise in its identification of the individuals and entities involved in the allegations underlying this case.
> . . . Plaintiff is respectfully encouraged to consider this M&R&O, as well as Defendant's briefing, and possibly discussions with Defendant's counsel, before revising its claims **so that this Court (or another court) may better analyze the merits of Plaintiff's claims**.

(Document No. 20, p.6) (emphasis added).

Consistent with the Court's suggestion that the claims in this matter could be narrowed, the Second Amended Complaint (Document No. 23) asserts nine (9) causes of action, compared to fifteen (15) in the Amended Complaint (Document No. 14). As evidenced by the pending motions, it appears the parties were unable to reach any agreement to the extent they heeded the Court's other suggestion to engage in a discussion about proper venue and jurisdiction. (Document No. 20, pp.4-6). However, Plaintiff now contends that "[t]he key conduct giving rise to MTEK's claims [] took place in the Middle District of North Carolina," and therefore, "the case should be transferred to the Middle District of North Carolina, Winston-Salem Division." (Document No. 24, p.2).

"On a motion to transfer, the facts as alleged in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor." Celgard, LLC v. LG Chem, Ltd., 3:14-CV-043-MOC-DCK, 2015 WL 2412467, at *6 (W.D.N.C. May 21, 2015) (citing Century Furniture, LLC v. C & C Imps., Inc., No. 1:07cv179-DLH, 2007 WL 2712955, at *2 (W.D.N.C. Sept.14, 2007)). As such, the undersigned will review Plaintiff's factual allegations, briefly discuss jurisdiction, and then address the eleven (11) transfer factors identified above from Crockett Promotions, Inc. v. Action Media Group, Inc.

**A. Facts**

Plaintiff is an Oregon corporation with its principal place of business in Portland, Oregon. (Document No. 23, p.1). Defendant Clayton purportedly resides in Charlotte, North Carolina, but has not appeared in this action, and the Clerk of Court issued an "Entry Of Default" (Document No. 10) against him on December 8, 2014. Id. Defendant Gosnell is a resident of Potomac, Maryland. Id.

Plaintiff contends that this Court has jurisdiction under 28 U.S.C. § 1332, based on diversity of citizenship and an amount in controversy exceeding $75,000. (Document No. 23, p.2).

> Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a Defendant resides in this District and a substantial part of the events giving rise to the claims occurred in this District. Venue also is proper in the Middle District of North Carolina because a substantial part of the events giving rise to the claims occurred in that District.

Id.

Plaintiff describes this case as focusing on agreements entered into between M-Tek and The Mirrenium Group ("Mirrenium"). (Document No. 25, p.1); see also (Document No. 23, pp.6-10). Plaintiff M-Tek "designed and delivered electronic products to Mirrenium while, unbeknownst to MTEK, Mirrenium was insolvent and incapable of remitting payment for said products and services. Id. Plaintiff argues that Mirrenium was incorporated by Defendants "to disguise the insolvency of its predecessor, Luxury Tec, LLC, which filed bankruptcy one day after Mirrenium was incorporated," and "was functionally the same company as Luxury Tec, LLC." (Document No. 25, p.2); see also (Document No. 23, pp.6-10).

Luxury Tec, LLC and Luxury Tec Holdings, LLC (collectively, "Luxury Tec") were incorporated under North Carolina law on June 13, 2008, and conducted business under the trade

6

name "Mirrus." (Document No. 23, p.2). Luxury Tec's principal place of business was Winston-Salem, North Carolina. Id. Brian Reid ("Reid") founded Luxury Tec and held 100% interest in Luxury Tec Holdings, LLC. Id. Reid is a resident of Winston-Salem.

"Gosnell, Clayton, and Reid each had a desk and workspace at Luxury Tec's offices located at 722 N. Liberty Street, Winston-Salem NC." Id. The Complaint alleges that Reid was President of Luxury Tec, and Clayton was Senior Vice President of International Business, and that "Gosnell, Clayton, and Reid acted as agents of Luxury Tec and transacted business on behalf of Luxury Tec." (Document No. 23, p.3).

In May of 2013, Clayton approached David Thibeau ("Thibeau"), President of Plaintiff M-Tek, to discuss the possibility of Luxury Tec ordering equipment from M-Tek. Id. Clayton met again with Thibeau in July 2013, and toured M-Tek's facilities in Oregon. Id. Later in July 2013, Thibeau met with Reid and Clayton at Luxury Tec's office in Winston-Salem. Id. "During the meeting, Reid and Clayton took Thibeau on a tour of the Luxury Tec office and specifically showed him where Gosnell's desk and workspace were located." Id.

Following those meetings, Luxury Tec and M-Tek reach an agreement for M-Tek to develop and deliver equipment to Luxury Tec. Id. M-Tek delivered equipment prototypes to Luxury Tec in or around September 2013. Id. In or around September and October 2013, the parties discussed the possibility of additional projects, and "Clayton travelled to Oregon multiple times to discuss upcoming projects." Id.

The Complaint further alleges that Clayton and Reid represented to Thibeau and M-Tek that Luxury Tec was adequately capitalized: "[s]pecifically, Reid and Clayton represented that Gosnell was a significant investor in Luxury Tec and played an active role in formulating and

7

executing Luxury Tec's strategy and business planning." (Document No. 23, p.4). In addition, the Complaint contends that:

> 30. Gosnell knew that Clayton and Reid were falsely representing material information to MTEK, including the financial status of Luxury Tec because he was copied on relevant emails, and because Reid and Clayton called him repeatedly, in Thibeau's presence, as early as September 2013, to discuss topics related to these issues. However, despite opportunities to do so, Gosnell failed to notify MTEK that these representations were false.

Id.

On November 14, 2013, Luxury Tec Holdings and LLC Luxury Tec, LLC filed for Chapter 7 bankruptcy in the Middle District Of North Carolina, Case Nos. 13-51310 and 1351411. (Document No. 23, p.5). On November 7, 2013, Defendant Gosnell paid Bell Davis & Pitt, PA, of Winston-Salem, North Carolina, a total of $5,000 for debt or bankruptcy counseling regarding the two Luxury Tec entities. Id., see also (Case No. 13-51310, Document No. 6, p.16, and Case No. 135141, Document No. 6, p.31). Plaintiff contends that Gosnell, Reid, and Clayton were aware of "Luxury Tec's financial problems, insolvency and impending bankruptcy no later than November 7, 2013," but that M-Tek never had any notice, or reason to believe, that Luxury Tec had entered bankruptcy. Id.

The Mirrenium Group, LLC ("Mirrenium") was formed on November 13, 2013, the day before the Luxury Tec bankruptcy filing, under the laws of Delaware. Id. Mirrenium's principal place of business was also 722 N. Liberty Street, Winston-Salem, North Carolina. Id. Gosnell, Reid, and Clayton were the sole members of Mirrenium. Id. According to Plaintiff, Gosnell, Clayton and Reid represented to M-Tek that the name change from Luxury Tec to Mirrenium was

"a simple rebranding measure" and "intentionally concealed the bankruptcy filings" from M-Tek. (Document No. 23, p.6).

Plaintiff contends that Reid was the Chief Marketing and Business Development Officer of Mirrenium; Clayton was the Chief Technology Architect and Managing Director of Global Markets of Mirrenium; and "Gosnell had control over Mirrenium including without limitation decision-making authority over strategy, business planning/development, accounting, and contracts Mirrenium entered into with third parties." Id.

According to the Complaint, Mirrenium operated as essentially the same company as Luxury Tec and continued its business relationship with M-Tek. (Document No. 23, p.7). Plaintiff M-Tek's representatives mailed invoices and placed phone calls to Mirrenium's representatives at its place of business in Winston-Salem, North Carolina.

Gosnell, Clayton, and Reid, as agents of Mirrenium, are alleged to have entered into agreements with M-Tek, knowing that Mirrenium was insolvent and incapable of paying for products or services it purchased from M-Tek. Id. Plaintiff contends that Mirrenium is the alter ego of Gosnell, Clayton, and Reid. (Document No. 23, p.8).

The Complaint further alleges that Gosnell had oversight of Mirrenium's day-to-day operations and exercises significant control over the affairs of Mirrenium, including whether invoices should be paid to third parties. (Document No. 23, p.18). More specifically, Plaintiff asserts that Gosnell had a telephone conference with Thibeau on May 9, 2014, thanking him for supporting Mirrenium's projects, and representing that Mirrenium was adequately capitalized and would submit payment for outstanding invoices to M-Tek "soon." (Document No. 23, p.19). It is alleged that Gosnell knew these were misrepresentations, and that he engaged in a scheme with Reid and Clayton to defraud M-Tek. Id.

Mirrenium filed for bankruptcy on July 21, 2014, in the United States Bankruptcy Court in the District of Delaware, Case No. 14-11762-BLS. (Document No. 23, p.14). This lawsuit was then filed against Clayton and Gosnell on October 30, 2014. (Document No. 1).

**B. Jurisdiction**

"… In Opposition Plaintiff's Motion To Transfer Venue…," Defendant Gosnell first argues that venue may not be transferred because "neither this Court nor the Middle District of North Carolina has subject matter jurisdiction." (Document No. 28, p.3). In support of this argument, Defendant incorporates by reference its "Brief In Support Of Defendant John W. Gosnell's Motion To Dismiss" (Document No. 28, pp.7-10).

Defendant does not appear to dispute that there is a diversity of citizenship between the parties, or that the amount in controversy exceeds $75,000, as alleged by Plaintiff. (Document No. 23, p.2) (citing 28 U.S.C. § 1332). Rather, Defendant contends that Plaintiff lacks standing to pursue claims of veil piercing, constructive fraud, fraudulent transfer, and breach of fiduciary duty. (Document No. 28, pp.7-10). Based on lack of standing regarding these claims, Defendant concludes that "neither this Court nor the Middle District of North Carolina has subject matter jurisdiction over Plaintiff's purported claims. Therefore, venue may not be transferred and this action should be dismissed." (Document No. 28, p.3); see also (Document No. 27, pp.7-8).

Defendant does not appear to argue that Plaintiff lacks standing to bring its other claims for fraud, unfair and deceptive trade practices, civil conspiracy, negligent misrepresentation, and punitive damages. Therefore, even *if* this Court, or the Middle District, agreed with Plaintiff's position on standing, Plaintiff does not dispute that either Court has subject matter jurisdiction to consider at least half of Plaintiff's claims. As such, it appears that Defendant's argument in its "…Opposition Plaintiff's Motion To Transfer Venue…," that the entire action should be dismissed

for lack of subject matter jurisdiction, is inconsistent with the argument it seeks to incorporate from its "Brief In Support Of Defendant John W. Gosnell's Motion To Dismiss." Compare (Document No. 28, p.3 and Document No. 27, pp.7-10). Notably, Defendant's motion to dismiss seems to seek dismissal of all of Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6).

Under the circumstances, the undersigned is not persuaded that Defendant's allegations regarding subject matter jurisdiction and standing preclude transfer of this case. Moreover, in the interests of judicial economy and efficient case management, the undersigned finds it appropriate to transfer this case without resolving Defendant's arguments under Fed.R.Civ.P. 12(b)(1) or 12(b)(6).

In this context, the undersigned finds a decision by Judge Beaty instructive:

> [T]he Supreme Court has held that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007) (internal quotations omitted). In this regard, **a court may properly consider non-merits issues, such as transfer pursuant to 28 U.S.C. § 1404(a)** or forum non conveniens, **without first reaching jurisdictional issues**. See Long Term Care Partners, LLC v. United States, 516 F.3d 225, 232 (4th Cir. 2008). . . . Because the transfer of an action pursuant to forum non conveniens or 28 U.S.C. § 1404(a) is a "non-merits ground for dismissal, ... [a] district court may therefore dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem, 549 U.S. at 432, 127 S.Ct. at 1192.

La Case Real Estate and Investment LLC v. KB Home of S.C., Inc., 1:09-CV-895, 2010 WL 2649867, at *1 (M.D.N.C. June 30, 2010) (emphasis added) (internal citation omitted). The Supreme Court in Sinochem Intern. Co. Ltd. v. Malayasia Intern. Shipping Corp. further stated that "jurisdiction is vital only if the court proposes to issue a judgment on the merits." Sinochem, 549 U.S. at 431 (quoting Intec USA, LLC v. Engle, 467 F.3d 1038, 1041 (7th Cir. 2006)).

**C. Transfer Factors**

The factors to be considered in deciding whether to allow a change of venue are well-established, as set forth above. The undersigned weighs these factors as follows.

**1. Plaintiffs' initial choice of forum**

The Second Amended Complaint asserts that venue is proper in this judicial district ("Western District" or "W.D.N.C."), as well as the United States District Court for the Middle District of North Carolina, Winston-Salem Division ("Middle District" or "M.D.N.C."), pursuant to 28 U.S.C. § 1391. (Document No. 23, p.31). Plaintiff contends that "a substantial part of the events giving rise to the claims occurred in both Districts. Id.[1]

In support of the pending motion to transfer, Plaintiff notes that Luxury Tec and Mirrenium's principal places of business were the same address in Winston-Salem, North Carolina and that "[t]he key conduct giving rise to MTEK's claims therefore took place in the Middle District of North Carolina, where representatives of Plaintiff met with Defendants and other Mirrenium representatives at this office." (Document No. 25, p.2). In addition, M-Tek delivered products and mailed invoices to the office in Winston-Salem. Id.

Plaintiff contends that its initial choice of the Western District was informed by Defendant "Clayton's connection to Charlotte, but he has now defaulted, greatly minimizing his role in the litigation of this case." (Document No. 25, p.7). Plaintiff now requests that this action be transferred to the Middle District, and contends that its initial choice does not preclude such a transfer. Id.

---

[1] As with the previous Complaints, Plaintiff's Second Amended Complaint still fails to describe *any* events giving rise to the claims that allegedly occurred in the Western District of North Carolina. (Document No. 23).

12

Defendant Gosnell concludes that "none of these [transfer] factors weigh in favor of a transfer to the Middle District of North Carolina," but offers no argument or authority suggesting that Plaintiff's revised choice of forum should not weigh in favor of transfer. Moreover, Defendant essentially argues that venue is not appropriate in either the Western or Middle Districts of North Carolina. (Document No 28). Defendant has not filed a motion, but makes a conclusory alternative argument that if venue is transferred it should be to Maryland. (Document No. 28, p.10).

The undersigned weighs this factor in favor of transfer to the Middle District of North Carolina.

**2. Residence of the parties**

Plaintiff, who requests transfer, is an Oregon corporation with counsel in Charlotte, North Carolina. Gosnell is a Maryland resident, with counsel in Winston-Salem, North Carolina. Clayton is alleged to reside in Charlotte, North Carolina, but has failed to appear in this matter.

Plaintiff contends that the Middle District is more centrally located between the two Defendants, and is closer to Maryland than the Western District. (Document No. 25, pp.7-8).

Defendant Gosnell acknowledges in his "Brief In Opposition…" that "[t]he **only** connection to the Western District of North Carolina is that Defendant Ryan Clayton ("Clayton") allegedly resides in Charlotte." (Document No. 28, p.1) (emphasis added). Even though Defendant Gosnell asserts that Clayton is the only connection to the W.D.N.C., and does not dispute involvement in business interests located in Winston-Salem, or that he has retained counsel for this action and related bankruptcy actions based in Winston-Salem, he still opposes transfer of venue. (Document No. 28). Instead, Defendant simply notes that none of the parties are residents of the Middle District. (Document No. 28, p.9).

13

The undersigned weighs this factor as neutral.

3. **Access to evidence**

Plaintiff asserts that since Luxury Tec and Mirrenium were headquartered in Winston-Salem, North Carolina, and M-Tek directed correspondence and invoices to this location, most potential sources of evidence, including witnesses and physical evidence such as company records, are more likely to be found in the Middle District than the Western District. (Document No. 25, p.8).

Defendant contends that "[t]here are no known items of proof in the Middle District of North Carolina *related to Gosnell's acts*." (Document No. 28, p.9) (emphasis added).

The undersigned finds that the Court is tasked with considering the location of *all* potential sources of evidence, and where such evidence might be most accessible. The undersigned weighs this factor in favor of transfer to the M.D.N.C.

4. **Availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses**

Plaintiff argues that Brian Reid lives and works within the Middle District, and that the Middle District is more centrally located between the Defendants. (Document No. 25, p.8). Plaintiff notes that the "veil piercing" facts occurred in Winston-Salem, and that key witnesses – financial and legal professionals who worked with Defendants are more likely to be in the Middle District. (Document No. 30, p.9). Plaintiff also asserts that professionals "who serviced the shell company, and employees will all be found in the Middle District." Id. Plaintiff concludes that there are no witnesses in Maryland (except Gosnell), and that the only likely Oregon witnesses filed this lawsuit and will travel to the Middle District as needed. Id.

Defendant does not appear to address this factor. See (Document No. 28).

14

To the extent there are non-party witnesses in this matter, they are most likely to be located in the Middle District of North Carolina. Based on the information currently before the Court, the undersigned finds that this key factor weighs in favor of transfer to the M.D.N.C.

**5**. **Possibility of a view by the jury**

The undersigned is persuaded that it is unlikely that a view by a jury is necessary here. Interestingly, the parties dispute whether Gosnell had a desk and work space in Luxury Tec and/or Mirrenium's office in Winston-Salem, however, neither side has suggested that a view of this alleged space, or any other premises, would be relevant at trial.

This factor is weighed as neutral.

**6**. **Enforceability of a judgment**

The undersigned cannot foresee, and the parties have not identified, any persuasive concerns about the enforcement of a judgment by a court in the Middle District or the Western District of North Carolina. This factor is weighed as neutral.

**7**. **Relative advantages and obstacles to a fair trial**

The undersigned does not foresee, and the parties do not argue, that there are any clear advantages or obstacles to a fair trial in either district. The parties should obtain a fair trial in either Court.

As such, the undersigned finds this factor is neutral.

**8**. **Practical issues affecting trial expediency and efficiency**

"Trials are never easy, expeditious, or inexpensive." Century Furniture, LLC v. C & C Imports, Inc., 1:07cv179-DLH, 2007 WL 2712955, at *5 (W.D.N.C. Sept. 14, 2007). Whatever this Court decides, there will be some travel and inconvenience.

15

The parties have offered little, if any, explicit view or evidence on this factor. On balance, it is the undersigned's view that trial expediency and efficiency slightly favor transfer.

9. **Relative court congestion between the districts**

Plaintiff contends that available data indicates that there were 1,175 filing in the Middle District, and 1,149 filings in the Western District, during the 12-month period ending March 31, 2014. (Document No. 25, p.6) (citing http://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2014/03/31). Defendant declines to discuss this factor. (Document No. 28).

The undersigned observes that for the 12-month period ending December 31, 2014, 1,101 civil cases were filed in the Middle District, and 1,247 were filed in the Western District. See Table C-1, U.S. District Courts, http://www.uscourts.gov/data-table-numbers/c-1. As of December 31, 2014, the pending private civil cases were 648 for the Middle District, and 690 for the Western District. The undersigned has also reviewed the "U.S. District Courts – Federal Court Management Statistics – Profiles" which suggest that as of June 2015, the Middle District was somewhat more congested than the Western District. See http://www.uscourts.gov/report-name/federal-court-management-statistics; see also, Speed Trac Technologies, Inc. v. Estes Express Lines, Inc., 567 F.Supp.2d 799, 805 (M.D.N.C. 2008).

Based on the foregoing, the undersigned finds that this factor weighs against transfer.

10. **Local interest**

"Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events. Speed Trac Technologies, Inc. v. Estes Express Lines, Inc., 567 F.Supp.2d 799, 804 (M.D.N.C. 2008) (finding transfer from

16

M.D.N.C. to W.D.N.C. to be appropriate) (citing <u>In re Volkswagen of Am. Inc.</u>, 506 F.3d 376, 387 (5th Cir. 2007).

The parties offer little, if any, argument on this factor. The undersigned finds that the Middle District of North Carolina – Winston-Salem Division, is the district and division with the closest relationship to the operative events.

The undersigned finds this factor favors transfer.

**11**. **Avoidance of conflict of laws**

Plaintiff contends that this case involves interpretation of North Carolina law, and no unnecessary problems with conflicts of laws will be created by transfer to the Middle District. (Document No. 25, p.8).

Defendant suggests that Plaintiff's tort claims "may involve Oregon law," and that Delaware law will likely apply to Plaintiff's purported claims to pierce the corporate veil. (Document No. 28, pp.9-10).

In reply, Plaintiff asserts that its causes of action accrued, and relevant events occurred, in North Carolina, therefore, North Carolina law will apply.

The undersigned weighs this factor as neutral; the Western District and the Middle District are equally capable of determining the law, and applying it, as is appropriate.

*       *       *       *

Based on the foregoing, and in accordance with the teachings of <u>Jim Crockett Promotions, Inc. v. Action Media Group, Inc.</u>, the undersigned has conducted a quantitative and qualitative analysis of the foregoing factors, and finds that a change of venue is appropriate in this case. See <u>Century Furniture, LLC</u>, 1:07cv179-DLH, 2007 WL 2712955, at *6 (W.D.N.C. Sept. 14, 2007).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion To Transfer Venue" (Document No. 24) is **GRANTED**, and that this action is **TRANSFERRED** to the Middle District of North Carolina, Winston-Salem Division.

**SO ORDERED**.

Signed: October 2, 2015

David C. Keesler
United States Magistrate Judge